## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BOSE CORPORATION, a
Delaware Corporation,

       Plaintiff,                   **Case No: 8:16-cv-02150-CEH-AAS**

vs.

558 EAGLE LAKE PARNTERS,
LLC, a Florida Limited Liability
Company; ANWAR ALNOBANI,
an Individual; and ALLEN FERDINAND,
an Individual,

       Defendant.

_____/

### PLAINTIFF BOSE CORPORATION'S RESPONSE IN OPPOSITION TO
### 558 EAGLE LAKE PARTNERS, LLC'S RULE 12(B)(6) DISMISSAL MOTION

      Plaintiff BOSE CORPORATION ("Bose" or "Plaintiff") through its undersigned counsel

and pursuant to Federal Rule of Civil Procedure 12(b)(6), responds in opposition to Defendant

558 EAGLE LAKE PARNTERS, INC.'s ("558 Eagle Lake") motion to dismiss for failure to

state a claim as well as under the theory that the Complaint is somehow shotgun.

## I.      BACKGROUND AND OVERVIEW

      The gravamen of this action against 558 Eagle Lake – and its affiliates Anwar Alnobani

("Alnobani") and Allen Ferdinand ("Ferdinand") (all three collectively "Defendants") - centers

on a carefully orchestrated scheme to import, warehouse, distribute, and then sell (both directly

and on-line) counterfeit **BOSE** branded headphones.   In bringing suit, Bose has articulated 75

detailed (and far from boilerplate) allegations crafted through its 22 page Complaint, explaining

558 Eagle Lake's role in owning, operating and managing "a Chevron Gas and Convenience

Store located in Eagle Lake, Florida" which, as pled, was the location where Defendants brought

in implicated **BOSE** labeled products for warehousing, shipping, and later sale. *See* D.E. 1, ¶2.

In bringing this action for direct violation of 15 U.S.C. §1116(d)(1) for counterfeiting (Count I), Willful infringement of multiple Federally registered **BOSE** trademarks under 15 U.S.C. §1114(1) (Count II), Federal unfair competition under 15 U.S.C. §1125(a) (Count III), Violations of Florida Statute §501.201 et. seq. (Count IV), and Florida common law unfair competition (Count V), Bose has focused on all three Defendants' "deliberate, intentional and willful attempt[s] to trade upon Bose's business reputation and goodwill in the **BOSE** Marks" where such combined conduct "have caused and will continue to cause irreparable harm to Bose and to the goodwill Bose owns in the **BOSE** Marks . . ." *Id.* at ¶¶51-52.

While 558 Eagle Lake contends that Bose "alleges no facts sufficient to bring any claim against 558 Eagle Lake," the Complaint contains sufficient detail how this property ownership group not only "owns and operates" the implicated Eagle Lake Chevron, but also directly "managed" (*id.* at ¶15) the facility that was "employed and used as a warehousing and/or inventory location for the implicated counterfeit products" (*id.* at ¶29).   In fact, United States Customs & Border Protection identified 558 Eagle Lake's facility as "the intended destination for a seized shipment of counterfeit Bose headphones" because it was listed as the importer of record.   *See id.* at ¶30 and ¶15 ("July 14, 2014 seizure notice [ ] listed . . . the address for the Eagle Lake Chevron – which is owned and managed by 558 Eagle Lake").   Moreover Alnobani – who "has also been identified as an owner of the Eagle Lake Chevron" (*id.* at ¶3) – has "allowed [others] to ship headphones to the Eagle Lake Chevron (which had last occurred in August 2015) and that those headphones contained the **BOSE** Marks" (*id.* at ¶31).

Once others "ship[ed] headphones to the Eagle Lake Chevron" that was "managed" by 558 Eagle Lake – Defendants offered and sold the counterfeits through various e-commerce sites:



which, as plead, "denoted a postal box at the United States Post Office in Eagle Lake, Florida located immediately next to the Eagle Lake Chevron." *Id.* at ¶¶16-18.  Put another way, "this postal box was used to ship goods (upon information and belief maintained at the Eagle Lake Chevron) to ship to unknown customers." *Id.* at ¶19.   Separate and apart from the aforementioned on-line sales, 558 Eagle Lake, as manager of that facility, "used the Eagle Lake Chevron for purposes of under-the-counter sale of counterfeit Bose headphones." *See id.* at ¶37.

In short, while 558 Eagle Lake attempts to suggest that Bose "does not offer any facts at all that relate to 558 Eagle Lake" it plainly ignores the totality of the aforementioned allegations, as well as how the Complaint pleads how:

> the Eagle Lake Chevron was the location for not only sale of implicated counterfeit Bose headphones, but also receipt from the sources of these knock-offs from purposes of maintaining inventor, as well as repackaging for later sale through the direction and oversight of Alnobani.   All of the foregoing was done through the aide of 558 Eagle Lake.

*Id.* at ¶37.   In addition, 558 Eagle Lake shrugs away the allegation how, as a result of all of this, "Defendants' customers and potential customers have been and/or are likely to be confused into thinking that the counterfeit products sold by Defendants are genuine Bose Products (specifically, headphones)." *Id* at  ¶51.

Unable to discredit the aforementioned allegations against it, 558 Eagle Lake's dismissal motion next attempts to suggest a false premise, namely that while it admits it now owns, operates and manages the situs of this infringing conduct, that such clandestine acts occurred before 558 Eagle Lake acquired ownership of the facility.   However, in making these arguments, 558 Eagle Lake attempts to cask Bose's allegations as having a temporal scope – where such allegations plainly do not have any time limitations.  *See, e.g.,* D.E. 23, pg 9 ("Plaintiff alleges, 558 Eagle Lake presently 'owns and operates' a Chevron Gas station . . .").   Bose's allegations directed to 558 Eagle Lake's conduct denote how such operation was not limited to a finite time, but instead at all times material to the allegations.  *See, e.g.,* D.E. 1, ¶¶2, 15, and 29.

As noted by the Federal Circuit, "the specifics of how [defendants] purportedly infring[ed] is something to be determined through discovery." *McZeal v. Sprint Nextel Corp*., 501 F.3d 1354, 1357-58 (Fed. Cir. 2007).   Thus, it is premature at the Rule 12(b)(6) stage to address the timeframes of 558 Eagle Lake's ownership in light of the aforementioned infringing acts.   That said, the Complaint does address infringing conduct – as recent as "early July 2016" - regarding e-commerce websites selling counterfeit headphones bearing the **BOSE** Marks which appeared to be based upon those very same e-commerce sites referenced above (having a similar email address and seller profile).  D.E. 1, ¶49.  This certainly discredits 558 Eagle Lake's theory.

As a last effort to avoid addressing its liability in this action, 558 Eagle Lake attempts to argue that its conduct, as plead, is more akin to contributory or vicarious liability under the Lanham Act.   While such additional causes of action may be plead, upon amendment of Bose's Complaint after discovery has been exchanged, Bose need not supplement its allegations until it obtains and reviews additional information in discovery.   Bose recently agreed to an extension

of time for 558 Eagle Lake to produce this discovery.  In addition, 558 Eagle Lake recently served its own discovery in the action – even while its dismissal motion remains pending.

Accordingly, 558 Eagle Lake's dismissal motion is without merit and should be dismissed for these as well as the following well grounded basis.

## II.     ARGUMENTS REGARDING DISMISSAL UNDER FEDERAL RULE 12(B)(6)

### A.   <u>Legal Standard for Federal Rule 12(b)(6)</u>

In addressing a Federal Rule 12(b)(6) dismissal motion, a court must view the allegations in a complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir. 1994).  Federal Rule 12(b)(6) dismissal is warranted only if a claim does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Harrison v. Office of the State Courts Administrator,* 2007 U.S. Dist. LEXIS 39019, at 6, 2007 WL 1576351 (M.D. Fla. May 30, 2007).  Courts are required to accept all of a plaintiff's well-pleaded facts as true, and all reasonable inferences are to be construed in the light most favorable to a plaintiff.  *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1274, n. 1 (11th Cir. 1999).  In general, courts disfavor Federal Rule 12(b)(6) motions to dismiss and only grant such motions in rare circumstances. *Gasper v. La. Stadium and Exposition Dist.,* 577 F.2d 897, 900 (5th Cir. 1978).

### B.   <u>Counts I&II: Counterfeiting and Infringement of Bose's Registered Marks</u>

To state a claim for infringement and counterfeiting Bose must allege "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."

*Chanel, Inc. v. Chanel255.org*, 2012 U.S. Dist. LEXIS 73894, at \*9 (S.D. Fla. May 29, 2012) (quoting *Planetary Motion, Inc. v. Techsplosion, Inc*., 261 F.3d 1188, 1193 (11th Cir. 2001) (internal citation omitted)).   In seeking Rule 12(b)(6) dismissal, 558 Eagle Lake argues Count I and II fail because Bose (i) "Does Not Allege that 558 Eagle Lake 'used' its trademarks in commerce" and (ii) "does not allege that 558 Eagle Lake had knowledge, oversight, control or any role in the wrongful conduct[.]"   *See* D.E. 23, pgs 5-6.

       1.  Bose Sufficiently Pleads "Use" in Commerce

A mark is "deemed to be in use in commerce" when "placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto" and the goods are transported or sold in commerce. 15 U.S.C. § 1127.   A simple sale by an accused infringer is sufficient to establish use in commerce and create liability.   *El Greco Leather Prods. Co. v. Shoe World, Inc*., 806 F.2d 392, 396 (2d Cir. 1986) ("Even though Shoe World was involved neither in the manufacture nor the affixing of the CANDIE'S trademark to the shoes, its sale of the shoes was sufficient 'use' for it to be liable for the results of such infringement and its claimed lack of knowledge of its supplier's infringement, even if true, provides no defense."); *GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d 457, 463* (S.D.N.Y. 2011) ("However, even if Electric Wonderland did not manufacture or label the goods, it is well settled that a retailer's direct sale of an infringing product is sufficient to create liability.").   As noted by *El Greco Leather* and *GMA Accessories*, its irrelevant whether 558 Eagle Lake did not make or actual affix labels to the implicated **BOSE** headphone products, or whether they directly made the underlying retail sale.   Put another way, "[i]t is no defense that a distributor did not actually affix the infringing mark to the goods, since actual sale of the goods

with an infringing mark is itself infringement." 4 McCarthy on Trademarks and Unfair Competition § 25.27 (4th ed. 2015).

Bose has alleged more than sufficient basis to accord "use" under 15 U.S.C. §1127 as referenced above, as well as through the following four "use" type allegations:

- "a postal box at the United States Post Office in Eagle Lake, Florida located immediately next to the Eagle Lake Chevron . . . was ***used to ship goods*** (upon information and belief maintained at the Eagle Lake Chevron) to ship to unknowing consumers" believing they were genuine BOSE headphones (D.E. 1, ¶¶18-19) (emphasis added);

- "the Eagle Lake Chevron had been employed and ***used as a warehousing and/or inventory location*** for the implicated counterfeit products" (*id.* at ¶29) (emphasis added);

- the believed part owner of 558 Eagle Lake "***used the Eagle Lake Chevron for purposes of under-the-counter sale*** of counterfeit Bose headphones" (*id.* at ¶37) (emphasis added);

- The "aforementioned ***uses of the BOSE Marks*** [by 558 Eagle Lake] constitute a deliberate, intentional, and willful attempt to trade upon Bose's business reputation and goodwill in the **BOSE** Marks" (*id.* at ¶50) (emphasis added).

558 Eagle Lake not only ignores these multiple allegations of use in commerce by Bose, but when addressing the "use" in commerce standard under 15 U.S.C. § 1127 it relies on the highly distinguishable scenario found in *Optimum Techs., Inc. v. Henkel Consumer Adveshives*, *Inc.,* 496 F.3d 1231, 1243 (11th Cir. 2007).   *Optimum* involved retailers placing a new product on shelf space marked with retail shelf tags bearing the trademark of a competitor.  *Id.* at 1242. There the court was tasked with deciding if a retailer's misplacement of the new product on the marked shelf space could be attributed to the distributor of the new product as a use in commerce. *Id.* at 1243. The court found that the retailer's unintentional comingling and mislabeling of the new product could not be attributable to the distributor because there was no evidence that the defendant distributor placed the plaintiff's trademark on goods or displays at

the retail level.  *Id.*  Here, there are no such issues, as in *Optimum,* with comingling of **BOSE**

branded headphone products on retail shelf spaces and instead the alleged counterfeiting and

infringement rest with retail sales at the 558 Eagle Lake's facility through both under-the-counter

sales as well as distribution of implicated products for on-line purchase at the nearby Post Office.

2.  Distributor liability as direct liability under 15 U.S.C. §1114(1)

Apart from arguing insufficient allegations as to "use in commerce," 558 Eagle Lake also

endeavors to argue that there exists no basis for distributor liability under 15 U.S.C. §1114(1).

558 Eagle Lake argues as a second basis to dismiss Bose's Lanham Act claims how the

Complaint "does not allege that 558 Eagle Lake had knowledge, oversight, control or any role in

the wrongful conduct[.]"  *See* D.E. 23, 6.  Specifically, 558 Eagle Lake argues that because

"Plaintiff does not allege that 558 Eagle Lake improperly supervised employees" Alnobani and

Ferdinand – that "Plaintiff fails to allege sufficient facts to support liability."  *Id.* at 5.

"It is well-established that 'liability for trademark infringement can extend beyond those

entities that actually perform the acts of infringement'".  *ITT Corp. v. Xylem Group LLC*, 963 F.

Supp. 2d 1309, 1324 (N.D. Ga. 2013) (*quoting Mini Maid Services Co. v. Maid Brigade Systems,*

*Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992)).  Such liability may include direct liability under 15

U.S.C. § 1114(1)(a) based upon use in interstate commerce of a counterfeit of a registered mark

in distribution of goods that are likely to cause confusion or to deceive.  *See, e.g., Electronic*

*Laboratory Supply Co. v. Cullen*, 977 F.2d 798, 803 (3rd Cir. 1992) ("Section § 1114(1)(a)

provides a civil cause of action against persons who distribute goods through unauthorized use

of an imitation of a registered mark likely to deceive the public.");  s*ee also, Spy Optic, Inc. v.*

*Alibaba.com, Inc.,* 163 F. Supp. 3d 755, 765-66 (C.D. Cal. 2015) ("Defendant is using Plaintiff's

marks, without Plaintiff's consent, 'in connection with the sale, offering for sale, or distribution' of allegedly counterfeit products.")

Bose has more than adequately alleged such distribution liability, including by averring how 558 Eagle Lake, through its part owner and manager Alnobani:

> used the Eagle Lake Chevron for purposes of under-the-counter sale of counterfeit Bose headphones. Upon further information and belief, the Eagle Lake Chevron was a location for not only sale of implicated counterfeit Bose headphones, but also receipt from the sources of these knock-offs for purposes of maintaining inventory, as well as repackaging for later sale through the direction and oversight of Alnobani. All of the foregoing was done through the aide of 558 Eagle Lake.

D.E. 1, ¶ 37. Bose need not allege any form of "knowledge, oversight [or] control" regarding these acts of 558 Eagle Lake it merely needs to allege, as it as done, a basis for distribution liability.

### 3. Bose does not Allege "Aiding and Abetting" Liability Nor Does it Suggest its Viability under the Lanham Act

As provided above, Bose's allegations denote 558 Eagle Lake's actions of not only under-the-counter sales of counterfeit products, but also overseeing and managing the inventory as well as repackaging such inventory, to further infringing sales of counterfeit **BOSE** headphones through e-commerce sites. D.E. 1, ¶ 37. In further describing 558 Eagle Lake's role, it makes a single allegation that "the foregoing was done through ***the aide*** of 558 Eagle Lake." *Id.* (emphasis added). Alleging aide or assistance regarding acts of counterfeiting and/or trademark infringement are appropriate when a trademark holder is further pleading a separate violation of a state unfair and deceptive trade practices act. *See, e.g., Woodbridge Structured Funding, LLC v. Structured Settlement Quotes*, 2014 U.S. Dist. LEXIS 166565, at * 17 (D. Conn. Dec. 2, 2014) ("Plaintiff's allegations describe unfair methods of competition and acts of deception in violation of public policy, acts occurring in the primary business of

structured settlement purchasing by SSQ, GC, and GSI, and an ascertainable monetary loss; moreover, plaintiff specifically alleges that GSI 'direct[s], actively participated in, lended aid to, ratified, and benefited from the wrongful, unfair, unscrupulous and unethical conduct . . . .' [are] sufficient to state a CUTPA claim against GSI.").

Here, the allegations as to aid were merely intended to support the assistance given by 558 Eagle Lake to the other actors in this infringement scheme – including Alnobani and Ferdinand.   Such allegations were merely to support not only Lanham Act liability but also related acts to support Count IV's claim made under Florida Statute §501.201 *et. seq.*   Such was certainly not meant to suggest aider and abetter liability – and 558 Eagle Lake's dedication of over two pages of its brief to this issue is entirely misplaced and unfounded.

    4.   <u>Bose has not Plead Secondary Liability under either Contributory or Vicarious Infringement – but may choose to do so later</u>

Akin to 558 Eagle Lake's unnecessary dedication of some two pages to addressing aider and abetter liability under the Lanham Act, it next directs another two pages addressing the underlying elements of secondary liability under the Lanham Act.   *See* D.E. 23, pg 10-12.   In essence, 558 Eagle Lake focuses on addressing how Bose may be entitled to address two additional causes of action sounding in contributory and/or vicarious infringement based upon its role as a distributor and warehouse of counterfeit **BOSE** headphones.   While it certainly may be the case that upon receipt of written discovery from 558 Eagle Lake – as well as conducting depositions in the case – that Bose may choose to amend its allegations to include one or more additional causes of action of secondary liability, the deadline to amend the complaint is over a month away (*i.e.,* November 21, 2016).   *See* D.E. 27.

### C.  <u>Counts III & V</u>:  Federal and Florida Unfair Competition

Akin to its allegations regarding Counts I & II for counterfeiting and infringement, 558 Eagle Lake's dismissal theories for Bose's causes of action sounding in Federal and Florida Unfair Competition (Counts III & V) rest solely on the theory that "Plaintiff has failed to allege 558 Eagle Lake participated in the unauthorized use of the Bose Trademarks, and has therefore failed to allege that 558 Eagle Lake 'used' its trademarks."  *See* D.E. 23, pg 12.

Under Florida common law, unfair competition is an "'umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.'"  *Third-Party Verification, Inc. v. Signature Link, Inc*., 92 F. Supp. 2d 1314, 1325 (2007) (*quoting Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co*., 494 F.2d 3, 14 (5th Cir. 1974)).  For example, a party may claim unfair competition under a variety of theories, including trademark infringement.  *See Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1252, 1267 (S.D. Fla. 2002).  In the Eleventh Circuit, "[c]ourts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."  *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n4 (11th Circuit 2001) (stating that the legal standards for federal trademark infringement, unfair competition, and dilution also govern such claims under Florida law).

Accordingly, the aforementioned allegations of use in commerce – including but not limited to Paragraphs 18-19, 29, 37, and 50 as cited above – more than qualify as sufficient use in commerce under prevailing Lanham Act legal authority.  *El Greco Leather Prods. Co. v. Shoe World, Inc*., 806 F.2d 392, 396 (2d Cir. 1986); see also *GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d 457, 463* (S.D.N.Y. 2011).  Thus, proper claims for both Federal Unfair Competition and Florida Common Law Unfair Competition have been plead.

### D.  Count IV:  Florida Deceptive and Unfair Trade Practice Act (FDUTPA)

To plead a valid claim under Fla. Stat. § 501.204(1) under the Florida Deceptive and Unfair Trade Practice Act (FDUTPA), a party must establish three elements (a) a deceptive act or unfair practice, (b) causation, and (c) actual damages.  *Gavron v. Weather Shield Manufacturing, Inc.,* 819 F. Supp. 2d 1297, 1301 (S.D. Fla. 2011).  The unauthorized use of another's trademark constitutes a deceptive and unfair trade practice.  *See TracFone Wireless, Inc. v. Access Telecom, Inc*., 642 F. Supp. 2d 1354, 1365 (S.D. Fla. 2009) (stating that trademark infringement is an unfair and deceptive trade practice in violation of FDUTPA and that this behavior is exactly the type of behavior the statute was meant to protect against).

When a FDUTPA claim is based on trademark infringement it too requires an allegation that the defendant used the mark in commerce. *It's a 10, Inc., v Beauty Elite Grp., Inc.*, 2013 U.S. Dist. LEXIS 179596, at *28 (S.D. Fla. Dec. 23, 2013).   More specifically, a FDUTPA claim can focus on "a trademark owner's claim against the unauthorized use of its trademark and the damages to the goodwill associated with the trademark that resulted from the unauthorized use." *Delta Air Lines, Inc. v. Network Consulting Assocs*., 2014 U.S. Dist. LEXIS 122072, at * 24 (M.D. Fla. Sept. 2, 2014).   Such allegations of use need not be detailed at the initial pleading stage.  *See, e.g., Roca Labs, Inc. v. Boogie Media, LLC*, 2013 U.S. Dist. LEXIS 69169, at * 25 (M.D. Fla. 2013) ("Roca Labs has alleged that Boogie Media infringed Roca Labs' registered marks in order to redirect internet traffic from Roca Labs' websites to Boogie Media's websites for commercial gain. The Court finds these facts sufficient to state a claim under FDUTPA.").

FDUTPA claims also only need to be plead with particularity when they sound in fraud, and because the Complaint does not allege fraud, the FDUTPA allegations of trademark infringement only need to satisfy general notice pleading requirements. *See, Motmanco, Inc. v.*

*McDonald's Corp.,* 2005 U.S. Dist. LEXIS 33965, at *27-28 (M.D. Fla. Mar. 28, 2005) (stating that because not all FDUTPA claims sound in fraud, only those that implicate fraudulent conduct are subject to heightened pleading standards; other claims under FDUTPA are subject to general notice pleading requirements due to statute's underlying purpose of protecting the consuming public and the liberal manner in which Florida courts have applied FDUTPA in the face of pleading inadequacies).

Here, the 558 Eagle Lake argues that the only element that may potentially be missing to satisfy a FDUTPA claim is that there no "deceptive act or unfair practice" under *Gavron* based upon the inability to establish 558 Eagle Lake's use in commerce of the **BOSE** Marks.  *See* 819 F. Supp. 2d at 1301.

This is the only element of a FDUTPA claim the defendant contends Bose failed to satisfy.   The aforementioned allegations of use in commerce – including but not limited to Paragraphs 18-19, 29, 37, and 50 within the Complaint as cited above – more than qualify as sufficient use in commerce under Federal Rule 8(a).   Once again, the defendant's motion to dismiss for failure to state a claim under FDUTPA should be denied because Bose has properly alleged the defendant's use of the **BOSE** Marks in commerce.

## III.     ARGUMENTS REGARDING IMPERMISSIBLE SHOTGUN PLEADING

In addition to requesting dismissal for failure to state a claim, 558 Eagle Lake also argues how "the Complaint is an impermissible shotgun pleading and should be dismissed" because Bose's pleading "fails to distinguish what each defendant is alleged to have done sufficiently enough to allow 558 Eagle Lake to identify which defendant engaged in which wrongful conduct."   *See* D.E. 23, pg 13.     At the outset, it is important to note that a Rule 12(b)(6) dismissal motion is not the proper vehicle to argue the inability to frame a responsible pleading,

but instead a motion for more definite statement should be brought under Federal Rule 12(e). *Dantzler, Inc. v. Hubert Moore Lumber Co.*, 2013 U.S. Dist. LEXIS 136962, at *8 (M.D. Ga. Sep. 25, 2013) (when a defendant claims it cannot frame a responsive pleading the appropriate remedy is not a motion to dismiss, it is a motion for a more definite statement under Rule 12(e)).

The Eleventh Circuit has held that "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997). Grouping defendants in a matter which gives fair notice of the nature of the claims does not constitute a shotgun pleading[1] under *Crowe*. *See Sprint Solutions, Inc. v. The Cell XChange, Inc.*, 2015 U.S. Dist. LEXIS 27688, * 3-4 (M.D. Fla. Mar. 6, 2015) (denying dismissal even though "Defendants also contend that the . . . Complaint improperly lumps them together . . . [as] all counts are plead against all Defendants."). Moreover, lumping together specific defendants is appropriate when the grouped defendants are interrelated. *See e.g. Meth Lab Cleanup, LLC v. Spaulding Decon*, 2015 U.S. Dist. LEXIS 96259, at * 5 (M.D. Fla. July 2, 2015).

558 Eagle Lake admits how "Plaintiff's allegations detail, at great lengths, the acts of Joseph . . . Alnobani and Ferdinand . . ." *See* D.E. 23, pg 13. As such, 558 Eagle Lake's suggested inability to understand the underlying allegations as to counterfeiting of BOSE headphones appears in opposite of this admission. Throughout the Complaint Bose makes specific references to each defendant when identifying their particular roles in this clandestine effort to sell counterfeit BOSE products, but likewise groups these entities together when they engage in the same core conduct, for example:

---

[1] "[C]ollective allegations" are "construed as pertaining to each defendant individually" which are not a shotgun pleading unless the pleading "denies a defendant notice of the specific claims against it." *See also 1-800-411-I.P. Holdings, LLC v. Georgia Injury* Ctrs., 71 F. Supp. 3d 1325, 1330 (S.D. Fla. Dec. 2 2014) ("The Court also rejects Defendants' contention that the Amended Complaint is confusing because it contains allegations pertaining to them collectively as 'Defendants'").

- "Defendants' acts constitute trademark counterfeiting of the **BOSE** Marks . . ." (D.E. 1, ¶ 56);

- "Defendants' actions, thus constitute trademark infringement of the **BOSE** Marks . . ." *Id.* at ¶ 60;

- "Defendants' actions, thus constitute unfair competition in violation of Section 43(a) of the Lanham Act . . ." *Id.* at ¶ 64;

- "Defendants' Misconduct alleged herein constitutes a violation of the Florida Deceptive and Unfair Business Practices Act . . ." *Id.* at ¶ 70; and

- "Defendants' misconduct alleged herein constitutes unfair competition under the common law of the State of Florida." *Id.* at ¶ 74.

Such is the very type of pleading condoned by the Eleventh Circuit in *Crowe*. *See,* 113 F.3d at 1539; *see also, Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct").

All five Counts also limit the reference paragraphs that factually support each claim, thus making it clear to 558 Eagle Lake what factual allegations each count is grounded in and allowing the defendant to make a responsive pleading for each claim. *See, e.g., Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1324 (11th Cir. 2015) (stating that when the defendants do not move for a more definite statement under Fed. R. Civ. P. 12(e) it is an indication that there was not a failure by the plaintiff to identify relevant facts related to each count).

558 Eagle Lake next places great weight on *Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001) to support its contention that the Complaint is a shotgun pleading.   See D.E. 23, pg 14.  However, the shear impossibility of the allegations against each defendant in *Magluta* is what rendered that complaint a shotgun pleading, "[t]he complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants

charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."   *See,* 256 F.3d 1282, 1284.   In the instant case all the Defendants have a geographic, employment or ownership tie to the Eagle Lake Chevron and each of the Defendants could very easily have participated in every act complaint of.   If anything, *Magluta* confirms Bose's Complaint is the inapposite of a shotgun pleading due to its relatively small number of defendants and the close ties of the accused parties.

In short, the Court should deny 558 Eagle Lake's motion to dismiss the Complaint as shotgun since a 12(b)(6) motion to dismiss is the improper vehicle to allege a failure to form a responsive pleading because a defendant is unaware of the allegations against it. Moreover, the Complaint plainly and simply sets forth the allegations against 558 Eagle Lake's such that it is aware of the conduct it is accused of.

## III.    CONCLUSION

558 Eagle Lake's dismissal motion regarding Bose's Complaint should be denied – as it is almost exclusively rooted in the singular argument that as to the five causes of action there are insufficient allegations to allege improper use of the **BOSE** Marks in commerce.   Bose's 75 allegations made in its 22 page complaint more than satisfy the obligation to establish improper and unauthorized use of its marks – including through 558 Eagle Lake's actions of owning, operating, and managing the Eagle Lake Chevron.   In addition, the allegations more than establish how the Eagle Lake Chevron was the location where counterfeit **BOSE** branded headphones were sold under-the-counter, as well as warehoused, repackaged, and shipped for on-line sale by Defendants.   In addition to denying the motion to dismiss for failure to state a claim, the Court should also disregard and deny defendant's request to dismiss the Complaint as a shotgun pleading. The Complaint sets forth Bose's claims in a manner that can easily be

digested, allowing 558 Eagle Lake to be aware of the conduct it is accused of and form a responsive pleading.

Respectfully submitted October 18, 2016.

*/s/Robert H. Thornburg*
Robert H. Thornburg
Florida Bar No. 630829
rthornburg@addmg.com
ALLEN, DYER, DOPPELT,
MILBRATH & GILCHRIST, P.A.
1221 Brickell Ave., Suite 2400
Miami, Florida 33131
Telephone: (305) 374-8303
Facsimile:  (305) 374-8306

*Attorneys for Plaintiff Bose Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 18, 2016, I presented the foregoing to the Clerk of the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which will send a Notice of Electronic Filing to:

Stephanie M. Boomershine
Florida Bar No.: 0046667
E-mail: sboomershine@boginmunns.com
**BOGIN, MUNNS & MUNNS, P.A.**
2601 Technology Drive
Orlando, Florida 32804
(407) 578-1334- Office
(407) 578-2181- Facsimile

*Attorneys for Defendant,*
*558 Eagle Lake Partners, LLC*

_**s/ Robert H. Thornburg**_____
Robert H. Thornburg